## LITTLEHEAD v. CLINTON.

No. 25569.   June 30, 1936.

Rehearing Denied Sept. 15, 1936.

Norman Barker and L. J. Burt, for plaintiff in error.

Walker & Lewis and Grady Lewis, for defendant in error.

CORN, J. This action was commenced in the district court of Okmulgee county by Acie Littlehead, as plaintiff, against Wilson Clinton, as defendant, the purpose of which was to recover damages for breach of promise of marriage. The parties will be referred to herein as plaintiff and defendant in the order of their appearance in the trial court.

Such portions of the plaintiff's petition as we deem necessary to give a clear understanding of the material facts upon which the action is predicated are as follows:

"That the defendant is a wealthy, full-blood Indian, 40 years of age, enrolled as Creek No. 3425, on Census Card No. 1057, of the Creek Tribal Rolls of the Creek Nation of Indian Territory; that the said defendant has had the advantages of travel and is experienced, cunning, and is endowed with the acumen and sagacity of the average man of age, and with opportunities of learning afforded by wealth and travel. That he is a resident of Creek county, Okla.

"That this plaintiff is a full-blood Indian girl, with a third grade, common school education; that she can speak little English, and can barely write her name. That she was born on the 5th day of May, 1913, and reared on her father's, Whiteman Littlehead's farm, said Whiteman Littlehead being a full-blood, illiterate Indian, living about eight miles southwest of the post office of Slick, in Creek county, Okla., which is in a rural community, inhabited for most part by full-blood Indians, freedmen allottees, and occasional, transient oil field workers. That said Acie Littlehead, plaintiff herein, never prior to meeting this defendant, as hereinafter complained of, received the attentions of any other man than the defendant, as hereinafter related; and was reared amid meager surroundings and unused to luxuries or use of money. That for years preceding the events hereinafter comp'ained of, the plaintiff knew the defendant, Wilson Clinton, who at one time lived adjacent to her father's farm, and was told by her parents and members of her family that the defendant was a man of wealth and prominence.

"Plaintiff avers and further complains that on or about the 15th day of November, 1930, this plaintiff was in Bristow, Okla., a city within Creek county, Okla., about ten miles from her father's home, on an errand of family business, when by chance she met the said defendant, Wilson Clinton, who came to her and told her that he always liked her, and that he was coming out to see her the next day, as he had separated from his wife and got a divorce from his said wife, and professed great interest, friendship, kindness, and regard toward this plaintiff. That this plaintiff returned home, from Bristow, immediately, on that day, after her said interview with said Wilson Clinton. That a short time after she arrived at her home, on said day, said Wilson Clinton came to her father's home, during the absence of her father and mother, while no one was at home, except plaintiff's unmarried sister. That said defendant then and there told this plaintiff that he intended to marry her, and she would be his wife within six months, and remained at her home, talking to this plaintiff, from early in the afternoon, talking and planning their marriage, until six p. m., when he went away.

"Thereafter, and within a few days, the date of which is unknown to plaintiff, but to wit, about the 18th day of November, 1930, he returned and told her more about the trouble he had had with his wife, who he said had left him and to whom he intended to never return, nor to permit his said wife to return to him, the said defendant, but again ardently renewed his professions of interest, friendship, and love, and intentions to marry this plaintiff. That he told this plaintiff that he was rich and that her father was poor, but that as her father had two farms, that he, the said defendant, would buy the home place and fix it up fine, and buy this plaintiff a car and fine clothes, rings and other jewelry, and did in fact buy her some fine clothes, consisting of dresses and handkerchiefs, all of silk, and did carry out his said professions to the extent of buying paint and entirely repainting her said father's house, and bought some new furniture to be used therein, consisting of table and chairs and other conveniences, and made other plans for his fu'ure residence and home with this plaintiff, and arranged to purchase a portion of her father's property and other land nearby, upon which to build a new house in which to live with this plaintiff, after their said marriage.

"H⌐ also induced plaintiff's parents to permit him to live in their dwelling house, and this plaintiff, being an illiterate Indian, un'earned in the ways of the world, and believing that marriage consisted as was formerly the custom in the Creek Tribe, that is, according to the tribal rites of marriage, and that the same constituted lawful marriage, by man and woman living together, and believing that defendant was eligible to marriage, and having been invited into their home, as a son of her said paren's, and said defendant did move in to live with the family, was permitted to and did occupy a room and cohabit with this plaintiff as husband and wife; that this plaintiff believed at said time that she was in fact the lawful wife of said Clinton, and that the act of living together and cohabiting constituted the marriage rite. That said Wilson Clinton lived in the family, and with this plaintiff, pretending to be the husband of this plaintiff until the month of February, 1931.

"Plaintiff avers that in fact the said defendant did, on the 14th day of November, 1930, file a petition for divorce, in the district court of Creek county, Okla., against his said wife, Cubah Clinton, the same being numbered and docketed as 516 D in said court; and he falsely told this plaintiff that he had been divorced, prior to his said courtship to her, which was believed and relied upon by this p'aintiff, but that said statement was false in this, to wit: That a cross-petition had been filed, and no divorce had in fact been granted, but that this plaintiff was falsely informed and was kept under false impression and false apprehension about the same, at all times, by the defendant. That she plighted her love to and faith in the said Wilson Clinton, and was honest and true to him.

"That she accompanied defendant to Muskogee, in February, 1931, and lived with him at a hotel, after which during the month of February, 1931, the said defend-

ant deserted her, at Muskogee, whence they had gone, by ruse and trick, which she describes, as fol'ows: That there was a false arrest, arranged for the said Wilson Clinton, by persons unknown to this plaintiff, but the same was arranged at the connivance of the said Wilson Clinton and other persons unknown to her, for the purpose of aiding the said Wilson Clinton in his designs to desert and betray the plaintiff, and the said Wilson Clinton was taken to Hot Springs, Ark., or accompanied such other persons to Hot Springs, Ark., the means and method employed for so doing being unknown to plaintiff. That while defendant was at Hot Springs, Ark., on February 27, 1931, he renewed his love and friendship and affection for this plaintiff, in a letter addressed to her. * * * (Letters copied into record.)

"That thereafter on the 7th day of June, 1931, the said Cubah Wilson, wife of the defendant, died, and all obstacles to the fulfilment of his said contract to marry plaintiff, who at all times was ready to marry defendant, were removed, and he had a legal and moral right to marry her, and it was his legal and moral duty to do so, but he refused and declined to marry plaintiff; but contrary thereto, married another woman.

"Plaintiff further says that on October 8, 1931, there was born to her a female child, who was begotten by the defendant; that said child is named Frances Clinton.

"That she now believes, and therefore alleges it to be true, that the said Wilson Clinton intended so, from the beginning, to deceive her, and that he falsely and treacherously, for the purpose of taking advantage of her inexperience, ignorance, and trustfulness, for his own carnal pleasures, and that when he discovered that she was pregnant by him, he deserted her, because he had fully accomplished his purpose of seducing her.

"P'aintiff further avers that she has had her hopes of happy marriage with said defendant shattered, and she has been disillusioned, humiliated, made to feel desolate, forlorn, and heartbroken by the cruelty and breach of the said defendant's promise, and as a result of his false illusions held up to her.

"Plaintiff further complains that since the said Wilson Clinton has wholly breached his promise to her, that she has since been scorned and been humiliated by him; that she has been subjected to great humiliation, shame, suffering, loss of prestige in the community where she was raised, and wherever she is known, and among the members of her family and tribe, and that by reason of her pregnancy and subsequent birth of her said child, on October 8, 1931, she suffered great and permanent injuries; and that she has been ridiculed, humiliated, degraded, embarrassed, and treated as an offcast, as a result of the wrongful acts, treachery, deceitfulness of the said defendant, all resu t-ing from his breach of promise and protestations of love and affection and blandishment of flattery and hopes created of better times and a life of luxury, as the honored wife of the said defendant, all to her damage in the sum of seventy-five thousand dollars ($75,000.00). * * *"

The trial court sustained a demurrer to said petition upon the opening statement of counsel, after a jury had been impaneled to try the cause.

Counsel for plaintiff relies upon the rule followed in the case of Waddell v. Wallace, 32 Okla. 140, 121 P. 245, to sustain plaintiff's petition. In that case the defendant represented himself to be a single man and the representations were made under such circumstances that the plaintiff had no reason to question their truthfulness, nor was she in possession of any knowledge to cause her to doubt their truthfulness, but in truth and in fact the defendant was at the time a married man and was therefore not eligible to marry the plaintiff. This court held, as stated in the second paragraph of the syllabus, that:

"Where a woman in good faith enters into a marriage contract with a man, and he fails to fulfill his promise, she may maintain an action for damages against him for breach of promise, notwithstanding the fact that he was married to another woman at the time the contract was made, if such fact was unknown to the woman at the time of the engagement."

The facts in the instant case do not bring it within the rule in the Waddell v. Wal'ace Case, supra, as it is clear from the petition that the plaintiff at the time knew that the defendant was a married man, and it is evident that she knew that the defendant had not yet obtained a divorce from his wife and that if a divorce should be granted it would not become final until the expiration of six months from the date thereof. That the defendant discussed this matter with her may be inferred from the language of the petition wherein it states "that said defendant then and there told this p'aintiff that he intended to marry her, and she would be his wife within six months." The plaintiff resided but a few miles from the county seat where the divorce action was pending in the district court and she could easily have investigated the status of the proceedings had she cared to do so.

It is an unfortunate circumstance in the life of this uneducated and inexperienced

Indian girl of the tender age of 17 years that she entered into the illicit and adulterous relation with the defendant, who was himself, as the record discloses, an incompetent Indian under guardianship both as to his person and his property, and the conception of a child during the three months interlude of illicit cohabitation, which was born in due season, greatly aggravated her unfortunate situation, but the foregoing rule of law cannot accommodate itself to the state of facts shown in this case. The fact that the defendant's disability to carry out his promise to marry the plaintiff was subsequently removed by the death of his wife does not bring the case within the rule, because of the fact that the plaintiff had full knowledge of the marital status of the defendant at the time he made the promise.

The judgment of the trial court sustaining the demurrer to the petition upon the opening statement of the plaintiff is affirmed.

OSBORN, V. C. J., and RILEY, WELCH, PHELPS, and GIBSON, JJ., concur. McNEILL, C. J., and BAYLESS and BUSBY, JJ., absent.